# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7025 | **DATE** | 3/4/2002 |
| **CASE TITLE** | Meyer Material Co. vs. Beniss Mooshol, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for reconsideration of this Court's November 1, 2001 order dismissing Plaintiff's RICO claims [39-1] is hereby denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 0 5 2002 date docketed | |
| | Notified counsel by telephone. | | | 47 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | MAR 0 5 2002 date mailed notice | |
| RO | courtroom deputy's initials | 02 MAR -4 PM 4:45 Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEYER MATERIAL COMPANY, an Illinois general partnership, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BENISS MOOSHOL, CHRISTINE MOOSHOL, )<br>CHRISTINA'S CLOSET, LTD., an Illinois )<br>corporation d/b/a CHRISTINA'S FASHION and )<br>BCD GROUP, LTD., an Illinois corporation, )<br>)<br>Defendants. ) | No. 00 C 7025<br><br>Judge Ruben Castillo |

DOCKETED

MAR 05 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Meyer Material Company ("Meyer") filed suit against Defendants Beniss Mooshol ("Beniss"), Christine Mooshol ("Christine"), Christina's Closet, Ltd. ("CCL") and BCD Group ("BCD"), alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et. seq.* This Court dismissed Meyer's RICO claims in open court and held that evidence of multiple illegal acts in furtherance of a single kickback scheme involving one victim does not constitute the "pattern of predicate acts" required by the RICO statute. Meyer now asks this Court to reconsider our decision to dismiss its RICO claims. For the reasons set forth in this opinion, Meyer's motion to reconsider is denied. (R. 39-1.)

### RELEVANT FACTS[1]

Meyer produces and delivers ready-mix concrete and related construction aggregates and

---

[1] The facts contained in this opinion have been taken from Meyer's complaint and its statement of uncontested material facts. (R. 1, Compl. ¶¶ 22-39; R. 31, Pl.'s Statement of Facts ¶¶ 1-55.) Defendants did not submit their own version of the facts of this case, but republished in their answer the preliminary statement contained in Meyer's complaint. (R. 11, Answer ¶ 1.)

provides construction services for a variety of building applications. (R. 31, Pl.'s Statement of Facts ¶ 1.) From 1972 to October 2000, Beniss was employed by Meyer as a staff accountant. (*Id.* ¶ 2, Ex. A, Warnke Aff, ¶ 5.) Christine, though now divorced from Beniss, was married to him during the relevant time period in this case, 1985 through 2000. (*Id.* ¶ 3.) CCL, owned and operated by Christine, sold women's apparel from 1990 to 2000. (*Id.* ¶ 4.) Beniss and Christine are each 50% shareholders of CCL. (*Id.*) BCD, another company jointly owned by Beniss and Christine, is in the real estate management business. (*Id.* ¶ 5.)

On November 7, 2000, Meyer filed a nine-count complaint in federal court against Beniss, Christine, CCL and BCD alleging: (1) civil RICO; (2) injunctive relief; (3) conversion; (4) breach of fiduciary duty; (5) assisting breach of fiduciary duty; (6) fraudulent concealment; (7) conspiracy; (8) accounting; and (9) constructive trust.[2] (R. 1, Compl. ¶¶ 22-61.) Meyer contends that Defendants engaged in a scheme of embezzlement over a four-year period that resulted in the theft of $1.9 million from Meyer. (*Id.* ¶ 1.) This allegation arises from the period when Beniss was employed by Meyer as a senior staff accountant. (*Id.*) In this capacity, Beniss was responsible for depositing C.O.D. receipts in Meyer's local bank account. (R. 31, Pl.'s Statement of Facts ¶ 12.) Beniss was also responsible for depositing miscellaneous checks that were sent to Meyer through the mail and for handling the payment of Meyer's state motor fuel taxes. (*Id.* ¶ 13.)

Until 1995, Meyer was categorized as a "bulk fuel supplier" by the State of Illinois, which meant that Meyer could purchase fuel without paying taxes, but it was obligated to pay state

---

[2] The civil RICO claim in this suit is Meyer's sole claim affording it jurisdiction in federal court. (R. 1, Compl. ¶¶ 22-29.) Counts Two through Nine are claims grounded in state law. (*Id.* ¶¶ 30-51.)

2

taxes on all fuel re-sales. (R. 1, Compl. ¶ 11.) To meet this obligation, Meyer would issue a check for $7,500 on a weekly basis as an estimated fuel tax payment. (*Id.*) In April 1995, Meyer was re-categorized from a "bulk fuel supplier" to a "bulk fuel user" by the State of Illinois, which meant that Meyer was no longer obligated to pay taxes on fuel re-sales. (*Id.* ¶ 12.) Even though it was no longer necessary for Meyer to make estimated fuel tax deposits, Meyer alleges that Beniss continued his practice of submitting check requests, receiving checks and making periodic deposits. (*Id.* ¶ 13.) Instead of depositing these checks into Meyer's account, however, Meyer contends that Beniss diverted the funds by placing them into corporate accounts held by CCL and BCD. (*Id.*)

At Meyer, Beniss' responsibilities also included depositing miscellaneous income that Meyer received in its daily operations into Meyer's C.O.D. account. (*Id.* ¶ 14.) This income included, for example, cash received from individuals purchasing small amounts of cement or gravel at one of Meyer's yards. (*Id.*) Beniss was responsible for taking the cash, checks and pre-prepared deposit slips to the bank and depositing them into the C.O.D. account. (*Id.* ¶ 15.)

From October 1995 to October 2000, Meyer argues that Beniss engaged in a fraudulent scheme to divert its funds into accounts owned by Defendants. (*Id.* ¶¶ 16-18.) Meyer maintains that Beniss would first prepare a check request in the amount of $7,500 payable to a bank, with the amount to be charged to Meyer's fuel purchase account. (*Id.* ¶ 16(a).) At the same time Beniss received the weekly tax checks from Meyer, he allegedly allowed the miscellaneous C.O.D. income to accumulate to a point at which there was a significant cash accumulation, equal or greater than the amount of the weekly tax checks. (*Id.* ¶ 16(b).) Meyer contends that Beniss then took the miscellaneous receipts to the bank for deposit into Meyer's C.O.D. account,

substituting one or more weekly tax checks for the equivalent amount of cash. (*Id.* ¶ 16(c).) Meyer states that Beniss ultimately endorsed the checks with the name and account number for "Meyer Material Co. C.O.D." and then deposited the cash receipts into one or more bank accounts under his or his wife's control. (*Id.*) From December 1999 to October 2000, Meyer maintains that Beniss deposited Meyer's checks directly into CCL's bank account rather than into Meyer's C.O.D. account, as he had done prior to December 1999. (*Id.* ¶ 16(d).)

Meyer states that this scheme was facilitated by use of the U.S. mail in that the bank statements and cancelled checks concealing the diversion of funds were mailed from the respective banks to Meyer and were intended to mislead Meyer as to the true activity in its C.O.D. account. (*Id.* ¶ 27(a)(1-4).) Meyer alleges that all of these activities occurred with the actual or implicit knowledge of Beniss' then wife, Christine. (*Id.* ¶ 16(c).)

In October 2000, Meyer's controller, James Scott, received a tip from the fraud unit of Meyer's bank that there was unusual activity in its accounts. (R. 31, Pl.'s Statement of Facts ¶ 45.) Meyer's bank noticed that checks written from Meyer's account in the amount of $7,500 were being periodically deposited into an account in the name of "Christina's Closet." (*Id.*) Knowing that Beniss' wife operated a store called "Christina's Closet," Scott notified his supervisor of this information, and Meyer investigated Beniss' activity. (*Id.*) The next day, Meyer employees confronted Beniss with several of Meyer's checks that had been made out to the bank and endorsed with the account number for "Christina's Closet." (*Id.* ¶ 46.) Beniss admitted that he had been taking money from Meyer. (*Id.*) Beniss was then fired and escorted from the building. (*Id.*)

Meyer's complaint alleges that Beniss and Christine's fraudulent scheme resulted in the

4

theft of at least $1.9 million of its funds. (R. 1, Compl. ¶ 1.) Meyer believes that Defendants used that money to make payments on or to improve numerous real properties they owned in the Chicago area. (*Id.* ¶ 18.) On November 1, 2001, this Court dismissed Meyer's RICO claims in open court, holding that Defendants' alleged acts did not constitute the "pattern of predicate acts" required by the RICO statute. (R. 38-1, Tr. at 4.) Meyer now asks this Court to reconsider our dismissal. For the reasons set forth below, we deny the motion to reconsider.

## ANALYSIS

### I. Legal Standards

A motion to reconsider brought under Federal Rule of Civil Procedure 60(b) "is an extraordinary remedy and is granted only in exceptional circumstances." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 161 F.R.D. 355, 357 (N.D. Ill. 1995) (quoting *Harold Washington Party v. Cook County, Ill. Democratic Party*, 984 F.2d 875, 879 (7th Cir. 1993)). Pursuant to Rule 60(b), a court may allow reconsideration on the "grounds of inadvertence, mistake, excusable neglect, newly discovered evidence, [and] misconduct of the opposing party." Fed. R. Civ. P. 60(b). Motions brought under Rule 60(b) must be based on one of the above-mentioned grounds for modification or reversal; they cannot be general pleas for relief. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992). Finally, as this Court has noted in prior decisions, "the Court's opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'" *Arenson*, 161 F.R.D. at 357 (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)). It is with these principles in mind that we turn now to our analysis of Meyer's motion to reconsider. (R. 39-1.)

5

## II. Meyer's RICO Claim Fails on its Merits[3]

Meyer argues that it can allege a "pattern of racketeering activity" as required by 18 U.S.C § 1962(c) and the associated case law. (R. 1, Compl. ¶¶ 22-29.) Defendants argue that because the complaint alleges only a single fraudulent scheme, a single victim and a single injury, it fails to establish a pattern of racketeering activity sufficient to satisfy RICO. (R. 43-1, Defs.' Resp. to Pl.'s Mot. for Recons. ¶ 1.) To establish a RICO claim, a plaintiff must plead and prove: (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity (often referred to as the "predicate acts"). *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998). The pattern requirement is difficult to define and requires courts to use common sense. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989); *U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1269 (7th Cir. 1990). In *H.J. Inc.*, the Supreme Court stated that the "continuity plus relationship" test first described in *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985), was still valid. *H.J. Inc.*, 492 U.S. at 238.[4]

Continuity is even more difficult to define. The Supreme Court has stated that multiple

---

[3] In the instant case, Meyer does not state sufficient grounds to satisfy the requirements of Rule 60(b). Specifically, Meyer fails to allege any inadvertence, mistake, excusable neglect or misconduct. Nor does Meyer claim that it discovered any "new evidence" to support its arguments. Instead, Meyer merely restates its position, failing to cite the Federal Rules of Civil Procedure or the appropriate standard against which their motion should be considered. We find, however, that even if Meyer could meet the legal standards for a motion to reconsider, its RICO claims still fail on the merits.

[4] Predicate acts are related if the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. As such, Meyer satisfies the "relationship" element of the pattern requirement. Meyer's allegations of mail fraud and money laundering by Defendants involve the same type of misconduct – a cash-stripping scheme – and are related to the common purpose of embezzling funds from Meyer to maintain Defendants' real properties. (R. 1, Compl. ¶¶ 22-29.)

6

schemes are not necessary to satisfy the pattern requirement of RICO, but plaintiffs must prove a "continuity of racketeering activity, or its threat." *Id.* at 240. Whether there is continuity depends on the facts of each case. *Id.* at 243. The Seventh Circuit has decided several cases since *H.J. Inc.* in which it has concluded that the necessary continuity was absent. *See Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1022 (7th Cir. 1992) (the "pattern" requirement that has emerged in Supreme Court and Seventh Circuit precedent seeks to prevent RICO from becoming a surrogate for actions regarding "garden-variety" fraud, routine commercial business disputes or sporadic criminal activity that belong in state court); *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 663 (7th Cir. 1992) (finding no pattern of racketeering activity from multiple acts of mail fraud occurring over a period of years in furtherance of a single scheme to defraud over two dozen plaintiffs); *Olive Can Co., Inc. v. Martin,* 906 F.2d 1147, 1151 (7th Cir. 1990) (holding that – despite a "number of victims" and a "large number of predicate acts" – continuity did not exist due to a short time span and a lack of variety in the predicate acts).

The Seventh Circuit has consistently evaluated the pattern requirement with reference to four factors, often referred to as the *Morgan* factors: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986). None of these factors is controlling standing alone; together, however, they provide the lens through which the courts may focus on the existence of "continuity plus relationship." *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir. 1988).

### A. Number and Variety of Predicate Acts

The first *Morgan* factor is the number and variety of predicate acts and the length of time

over which they were committed. Meyer alleges a scheme lasting from 1995 to 2000, involving seventy-two acts of mail fraud and a considerable number of instances of money laundering. (R. 1, Compl. ¶¶ 16-18.) The Seventh Circuit has stated that "the existence of a multiplicity of predicate acts [there, the mailings,] may be no indication of the requisite continuity of the underlying fraudulent activity." *Lipin Enters., Inc. v. Lee*, 803 F.2d 322, 325 (7th Cir. 1986) (Cudahy, J., concurring). In the instant case, the multiplicity of predicate acts is not an indication of the continuity of the underlying fraudulent activity. Meyer's complaint reveals that each allegation of mail fraud and money laundering relates back to the overall scheme to embezzle funds from Meyer. Under these circumstances, we believe that the raw number of alleged transactions and the length of time over which those transactions occurred was "pure happenstance in light of the underlying concern which is the 'continuity' of the criminal activity." *U.S. Textiles*, 911 F.2d at 1268. Thus, the first *Morgan* factor weighs against Meyer.

### B. Number of Victims

The second *Morgan* factor requires a consideration of the number of victims. While this factor cannot be dispositive of any "pattern" determination, we believe it is highly significant in the instant case when it is combined with the other factors. The alleged scheme in this case occurred over a four-year period and encompassed an unknown number of alleged acts of mail fraud and money laundering. Meyer, however, is clearly the only victim here and the only one ever targeted by Defendants. Although Meyer argues that banks and creditors will also be harmed by Defendants' fraud, it fails to cite any case law and the Court's independent research reveals no relevant case law reflecting that injuries this indirect can satisfy this requirement. (R. 39, Pl.'s Mot. for Recons. ¶ 4(a).) In light of the fact that the concern in this context is with

8

the alleged "continuity" of the criminal acts, we note that there is no indication that there are other potential "Mooshol victims" waiting in the wings. Therefore, the second *Morgan* factor also weighs against Meyer.

### C. Presence of Separate Schemes

The third *Morgan* factor requires the Court to examine whether there are separate schemes, although the definition of a "scheme" may be as difficult to explain as the definition of a "pattern." *H.J. Inc.*, 492 U.S. at 241 n.3. In *H.J. Inc*, the Supreme Court held that a plaintiff need not prove multiple schemes to show a pattern for purposes of the RICO statute. *Id.* This does not mean, however, that the fact that there is only one scheme involved is of no consequence to the pattern determination. *U.S. Textiles*, 911 F.2d at 1269. Meyer alleges that Defendants devised the following two schemes to defraud: (1) Beniss engaged in a cash-stripping scheme whereby he stole cash from Meyer's C.O.D. deposits and deposited the cash into his own personal or corporate bank accounts or used it to pay third parties for improvements made to his real properties; and (2) Beniss caused Meyer to issue checks for the purpose of paying a fictitious "fuel tax," and then Beniss endorsed and deposited them into a CCL bank account. (R. 1, Compl. ¶¶ 22-29.) In this Court's view, we are presented with allegations of only one scheme to defraud, *i.e.* Beniss used his position as an employee to defraud Meyer. Thus, the third *Morgan* factor also weighs against Meyer.

### D. Occurrence of Distinct Injuries

The final *Morgan* factor is whether Plaintiff sustained distinct injuries. Meyer argues that it suffered an economic injury each time Beniss embezzled funds from it. The question arises, however, whether each of these injuries was "distinct" in the sense that it "signaled, or by itself

9

constituted, a threat of 'continuing' criminal activity." *U.S. Textiles,* 911 F.2d at 1269 (a natural and common sense approach to the pattern element of RICO instructs that identical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO). In this case, the injuries stemmed from a single scheme to defraud involving similar predicate acts. Thus, Meyer's alleged injuries are not distinct. *See, e.g., Clark v. Robert W. Baird Co., Inc.,* 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) (Bucklo, J.); *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 821 (7th Cir. 1991). Beniss made one decision to defraud Meyer, and the harms suffered by Meyer were cumulative rather than independent. Therefore, the final *Morgan* factor also weighs against Meyer.[5]

---

[5] Meyer cites to four cases in support of its contention that the Seventh Circuit has now recognized that the allegation of a single scheme injuring a single victim does not preclude a finding of racketeering activity. The cases upon which Meyer relies, however, are distinguishable. *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1306 (7th Cir. 1987) (this decision pre-dates *H.J. Inc.* and in no case subsequent to *H.J. Inc.* has the Seventh Circuit held that a pattern has been properly alleged or proved under the circumstances of *Liquid Air*. Furthermore, in *Meyer* we see an interdependence among the predicate acts and that each act was not responsible for a distinct injury, whereas in *Liquid Air* each false invoice represented a distinct attempt to defraud the plaintiff); *Appley v. West,* 832 F.2d 1021, 1028 (7th Cir. 1987) (in *Meyer,* unlike in *Appley* where the plaintiff suffered repeated injuries, Beniss' alleged scheme had only one victim, one injury and necessarily ended when Meyer discovered Beniss' activity); *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.,* 63 F.3d 516, 524 (7th Cir. 1995) (in *Meyer,* unlike in *Uniroyal* where the evidence established the existence of at least four separate schemes, we do not see more than one scheme, nor do we see the occurrence of distinct injuries); *LaSalle Bank Lake View v. Seguban,* 937 F. Supp. 1309, 1321 (N.D. Ill. 1996) (this case relied on *Liquid Air* and *Uniroyal* – which we have already distinguished above – in holding that each false teller ticket prepared by the defendant constituted a distinct injury to the plaintiff. Additionally, the *LaSalle* Court's cursory analysis of RICO's pattern requirement focused solely on the existence of distinct injuries and failed to take into account the other *Morgan* factors, including the presence of only a single scheme, a single victim and the lack of a continuing threat of criminal activity).

Our conclusion in the instant case is premised upon a natural and common sense application of all of the *Morgan* factors to the facts and circumstances surrounding Defendants' alleged diversion of Meyer's funds.[6] We do not believe that Meyer's allegations of mail fraud and money laundering rise to the level of a "pattern of racketeering activity" sufficient to support a civil RICO claim.[7] In this case, as the Court stated in open court on November 1, 2001, a single scheme to defraud a single victim, resulting in a single economic injury, does not comport with the "continuity" factor of RICO's pattern requirement. (R. 38-1, Tr. at 4.) Therefore, we deny Meyer's motion to reconsider.[8]

---

[6] A similar application of the *Morgan* factors can be seen in *Clark*, 142 F. Supp. 2d at 1072. There, the district court examined the evidence, applied the *Morgan* factors and concluded that where there was only one victim, one scheme and the existence of distinct injuries was arguable, the plaintiff could not establish a pattern of racketeering activity. *Id.* (also noting that because the defendant's scheme had been discovered, there was no longer a continuing threat to the plaintiff).

[7] Because we find that Meyer cannot allege a pattern of racketeering activity sufficient to support its civil RICO claims, we do not need to consider Meyer's other claims.

[8] Generally, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). This general principle is especially applicable to the instant case because Meyer had only asked the Court to resolve its alleged RICO claims and had consciously delayed in proceeding with its state law claims. Consequently, the Court exercises its discretion and relinquishes its supplemental jurisdiction over Meyer's remaining state law claims because the Court has dismissed Meyer's sole federal claim, the civil RICO count. 28 U.S.C. § 1367(c)(3). Accordingly, Meyer's state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, Meyer's motion to reconsider this Court's November 1, 2001 order dismissing Plaintiff's RICO claims is hereby denied. (R. 39-1.)

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: March 4, 2002**